Kerry Cutler v. Pedro Torres v. Rodriguez Good morning, Your Honor. May it please the Court. Daniel Lambright, New York Civil Liberties Union, appointed by this Court to represent Plaintiff Kerry Cutler on appeal. Your Honors, we're here because Mr. Cutler was held in jail for over two years despite a court order that he be released to strict and intensive supervision and treatment. Complying with court orders is an essential element of the judicial system, particularly where those court orders provide for the release of an incarcerated individual. Isn't that a little bit overstating what the court reporter said? It said, yes, he should be released once conditions in a suitable location were found. So it wasn't just release him on this day, and he wasn't released, and therefore there's a violation. Correct. So the court order put Mr. Cutler into the custody of docs, and then the court order said essentially release him as soon as proper arrangements are made. And we interpret that as soon as proper arrangements were made to be that they approve that housing was compliant with New York state law. It's up to the prisoner, the person who's released into custody, to come up with the housing. Correct. And so there's no requirement of approval. Well, there's certainly a requirement that docs release him, that docs have essentially a reason that it is keeping him in. And what Mr. Cutler alleged was that he provided compliant housing, and that the parole officer simply sat on that compliant housing, leading him to stay in prison unnecessarily for almost two years. Did you hear that this was beyond bureaucratic delay and negligence, and somehow was in bad faith on the part of the officer, Torres? I think that at this juncture, that is what can be inferred from the complaint. So what Mr. Cutler also alleged was that the officers were failing to investigate proposed addresses, that the officers also withheld information, and that the officers were essentially keeping him in, willfully keeping him in prison additionally beyond the time period, and just holding him until he was released to an address that Mr. Cutler alleges that they knew was compliant for over a year, but failed to approve it, basically to keep him in custody. But what parts of the complaint, what supports sort of the allegation or basis for inferring bad faith on the parole officers, as opposed to, as Judge Walker was just noting, bureaucratic delay? Right, so again, I think what the court should look at is the collective actions. So again, Mr. Cutler suggested that the officers were lying about what steps that they took to investigate housing, that they were not investigating housing. And again, this is at the motion to dismiss stage, where inferences should be drawn in favor of Mr. Cutler. And Mr. Cutler is, of course, a pro se plaintiff, where again, the court denied this without giving him the chance to amend his complaint. And should there be any procedural defects, that could be cured by simply allowing Mr. Cutler the ability to amend and to say what is the reasonable inference that the officers were acting willfully in holding him in custody. And so essentially, Mr. Cutler's claim is that these officers were intentionally undermining the state court order and holding him in custody beyond that order and to keep him in. And again, this claim is not barred by the Heck Doctrine for two reasons. One, when Mr. Cutler filed the damages action, he was no longer in custody and thus no longer had a habeas remedy. And then two, this action seeks to vindicate a state court order rather than implying the invalidity of that state court order. The black letter law from this circuit is that Heck does not apply when a habeas remedy is not available. And that is stated by this court in green. As defendants have recognized, this court recognizes an out-of-custody exception to the Heck Doctrine. And what this court said in green v. Montgomery is that Heck only acts as a bar to 1983 suit when the plaintiff has a habeas remedy available to him. Mr. Cutler, there's been no intervening case law from this circuit or from the Supreme Court. And because Mr. Cutler was no longer in the custody that he complained of, he no longer had a habeas remedy. And thus, Heck could not bar the 1983 claim. And then there's a separate independent reason that Heck couldn't bar this claim. And it's because he was not challenging the invalidity of the SIST order. So the Heck Doctrine applies when it necessarily implies the invalidity of a conviction or sentence or a substantive determination about custody. Mr. Cutler was not challenging his 1997 conviction. He was not challenging his sentence. And he was not challenging the 2015 SIST order. He was challenging the actions of the parole officers. And indeed, what this court has said in Huang v. Johnson, which we cite in our brief, is that Heck does not bar a claim where it would just kind of imply the invalidity of a duration of confinement. You're right that you're still not home free, are you? I mean, there are other grounds upon which the case could be dismissed, that he failed to allege personal involvement, that he got due process, and that there was qualified immunity. Right, so turning to the personal involvement, what the district court found is that Mr. Cutler engaged in group pleading. And I think if you look at the complaint, he did not engage in group pleading. So group pleading is the circumstance where kind of someone says, the defendants threw out the complaint. And it's impossible to differentiate between the defendants and what the actions of the defendants are. Mr. Cutler sufficiently differentiated between the defendants. So for example, he doesn't allege that parole officer Daisy Rodriguez was involved in any of the delayed release claims. He only alleges that parole officers Torres and two unnamed officers were involved in those claims. And again, any issues kind of around group pleading, if this court finds that that was a problem, Mr. Cutler, this was dismissed on the first attempt. He wasn't given the ability to amend his complaint. And he should be given that ability because it would not be futile. And to qualified immunity, if this court finds that the parole officers were in violation of a clear order, then qualified immunity would not attach. And also, at the motion to dismiss stage, it's generally not proper to find qualified immunity without giving Mr. Cutler the ability to go through some discovery and show that the officers were intentionally violating the court order. That's a rebuttal. Thank you.  Good morning, and may it please the court. Blair Greenwald on behalf of the two named FLEs. I'd first like to address the various grounds for dismissal of the delayed release claim, and then just briefly talk about the parole revocation claim. So as to the delayed release claim, as a threshold matter, Cutler has waived any challenge to the district court's ruling that he failed to sufficiently allege personal involvement. And that is a sufficient ground to affirm here. But in any event, dismissal is appropriate for even his new formulation of the delayed release claim based on the 2015 cyst order. Because at a minimum, qualified immunity applies to that claim, given that the text of the order does not expressly impose any specific affirmative obligation on Torres to approve housing for Cutler. What the cyst order is, it's primarily directed to Cutler, and it imposes a specific obligation on him to reside in the approved housing. But the order does not expressly impose a specific affirmative duty, even on docs. If there were allegations in the complaint that the parole officer or docs were intentionally and actively undermining his ability to be placed in compliant housing, your view is that the order has no impact on them? That the only obligations for the order were on Mr. Cutler and not on parole or docs in any way? So I want to be clear about what the order says versus what state law says. So we do think that one of the last terms of the order, which is that respondent, Mr. Cutler, shall be released from custody and on to cyst as soon as proper arrangements are made. That does impose an obligation to release him once the proper arrangements are made. But it's state law that imposes duties on docs to investigate and either approve or reject as appropriate housing that is proposed by an incarcerated individual. Now here, Mr. Cutler has affirmatively abandoned any claim that docs has violated its state law duties to investigate and either approve or reject housing. He is relying solely on the 2015 cyst order. And all that that expressly directs is that he be released after he has secured appropriate housing. And especially, we would urge the court to rely especially on qualified immunity because the text of the order here does not impose the specific affirmative obligation that Mr. Cutler urges here. I'm sorry, I missed that last part you said. Oh, I'm sorry. Did not impose a specific obligation? It does not impose a specific affirmative obligation on docs to approve any specific housing for Mr. Cutler. I would also note that. Well, isn't there kind of a reasonableness component here? Suppose, I seem to see in the papers here that one of the claims he has is that one housing possibility was suggested to them and nothing happened for a year on that. And so that was a specific one up for approval. They did nothing for a year. Ultimately, I guess they approved it. But what about that year? So that's not quite right. I'd like to separate the two buckets. So one is this specific address that Your Honor is mentioning. The allegations do not say that he proposed that address. In fact, they say the opposite. His sworn complaint says that docs did not accept any of the residences that he proposed. So that eliminates this address. What he alleges instead is that some docs officials independently had awareness of this address. But he does not allege either that the address was compliant with all of his conditions before his release, nor does he allege that there's any violation of state law. And in fact, there is not. There is no specific obligation that a parole officer who knows of an address is required to reserve any particular address for any particular relaxee. I mean, dozens of individuals are released to community supervision every day. I'd then also just like to briefly address the other bucket, which is that he alleges in his complaint that he proposed 15 addresses to docs and that those addresses were not approved. But he does not allege that those 15 addresses, any of them. He doesn't allege the specific address. He doesn't allege that they were compliant with all of his conditions. He also does not allege that docs erroneously rejected any of those as either inconsistent with his conditions or otherwise unacceptable. But if nothing happens and there's no approval and there's no disapproval voiced to him, it's just he gives them addresses and they have them, what's supposed to happen next? Is there a requirement that docs follow up on those within a specified period of time and then get back to him, yes or no? Explain particularly the no's. Sure. So under state law, and this is explained in more detail in the New York Court of Appeals case matter of Gonzales, which is cited in our brief. But in New York law, New York correction law, 201 subdivision 3, docs is required. I'm going all the way to the subdivision. Thank you. And this is explained in more detail in matter of Gonzales. But essentially, docs has a duty under that state law to investigate residents that are proposed by the incarcerated individual and then either accept or reject them as appropriate. The incarcerated individual may, if they disagree with that determination, may challenge that in state court. Also, I would acknowledge, and we cite some examples in our brief as well, incarcerated individuals who believe that they have proposed a residence that satisfies all of their conditions and that should be released to, they can bring a habeas claim in state court. So there are remedies under state law. But here, Mr. Kotler has abandoned any claim that the defendants here violated state law. His allegations do not sufficiently allege any violation of the express terms of the 2015 cyst order. And therefore, the dismissal of that claim is appropriate here. I'd also just like to briefly turn to the parole revocation claim, if the court has no further questions on the delayed release claim. So as to the parole revocation, I'd first just like to acknowledge that counselor for Mr. Kotler has recognized that there were no, I'm sorry, before turning to that, I'd just like to briefly acknowledge the recognition that Apelli Rodriguez was not named in any way regarding the delayed release claim. And regardless of whatever happens with Apelli Torres, Apelli Rodriguez should, I think by lack of dispute from the other side, should certainly be dismissed from that claim. As to the parole revocation claim, there are a few different grounds that the court can affirm the dismissal of that claim. Just to clarify at the outset, I think a lot of the issues regarding that claim have been greatly narrowed on appeal. So all that we're concerned about is whether there is a basis for him to amend his complaint to challenge the Apelli's recommendation to issue the parole revocation warrant. As to that, it is futile to amend or to add either a malicious prosecution or a false arrest claim for a few separate reasons. One is that there is collateral estoppel based on the probable cause finding that was made at the preliminary revocation hearing. The district court correctly held that probable cause is a complete defense to a malicious prosecution or false arrest claim. Kotler did not challenge this holding in his opening brief and has therefore waived any challenge to it. But in any event, it was correct. He had a full and fair opportunity to challenge the probable cause finding at the parole hearing. He cross-examined witnesses. He presented his own testimony. And the hearing officer correctly found probable cause there. In addition, and entirely independently, collateral estoppel also stems from his subsequent civil management proceeding. The state court there relied on the same testimony from parole officer Torres. And the woman who was involved in the issue there credited that testimony and evidence. And therefore, there's no basis for him to claim now that that evidence is false as a basis for any false arrest or malicious prosecution claim. And in addition, I would also just note that he has not presented any argument in his reply to rebut this basis for estoppel. And therefore, that renders that claim appropriately dismissed with prejudice. If the court has no further questions, we would urge the court to affirm the dismissal. All right. Thank you very much. Turning to waiver, I think I want to just make clear that the district court completely failed to analyze the state court order, despite the fact that Mr. Kotler claimed that this state court order was the basis of his 14th Amendment right. The court only analyzed whether the officers had a statutory obligation to approve housing for him, which was not his claim. And he states his claim at JA-19, where he states that the officers failed to effectuate his release as directed by order of the state. Additionally to willfulness, Mr. Kotler stated that the officers essentially failed to take the necessary steps to effectuate his release from custody. So essentially, what Mr. Kotler said is that essentially, that the officers knew of compliant address that he could be released to, and just simply failed to release him. And he should have the opportunity through discovery to show that that is the case, rather than there would be some sort of technical reason why they didn't release him, such that dismissal at this stage is inappropriate. And to the order itself, certainly it's the case that parole officers can't look at a order and say, oh, I disagree with this order, and act to undermine the order. Mr. Kotler was put into their custody. They had the ability to release Mr. Kotler. They had the obligation to release Mr. Kotler. And they simply can't undermine a 2015 CIS order, just because they disagree with that order. Even if the language in there says that Mr. Kotler has to live at an approved address, it's clearly the case that docs had to approve the address, so that he could live at an approved address. And turning to the qualified immunity, there's no debate that the language in any of the language in the order is unclear. Docs knew what it had to do. They knew they had to release him once they had approved, once they had compliant housing. And Mr. Kotler alleges that they just simply did not release him. And that was a willful action. And to the extent that the court has any concerns about if Mr. Kotler sufficiently pled that it was a willful action, they should allow him the opportunity to replead to cure any deficiencies, given that he is a pro se plaintiff. And this was his first opportunity. Thank you, Your Honors. Thank you very much. Thank you both for your arguments. We will take this case under advisement.